UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No.:_____

AMERICAN CONTRACTORS
INDEMNITY COMPANY, a California
Corporation,

        Plaintiff,

v.

REGIS SOUTHERN, INC., a Florida
Corporation, CHRIS M. NETRAM,
individually, RAMASAR BHAGU,
individually, RANJIT K. CHETRAM,
individually, STATE OF FLORIDA,
DEPARTMENT OF ENVIRONMENTAL
PROTECTION, STATE OF FLORIDA,
DEPARTMENT OF
TRANSPORTATION, and GULF
COAST BANK & TRUST COMPANY,

        Defendants.
_____/

## COMPLAINT

Plaintiff, AMERICAN CONTRACTORS INDEMNITY COMPANY, through its counsel, hereby sues Defendants, REGIS SOUTHERN, INC., CHRIS M. NETRAM, RAMASAR BHAGU, RANJIT K. CHETRAM, STATE OF FLORIDA, DEPARTMENT OF ENVIRONMENTAL PROTECTION, STATE OF FLORIDA, DEPARTMENT OF TRANSPORTATION, and GULF COAST BANK & TRUST COMPANY and alleges:

## PARTIES, JURISDICTION, AND VENUE

1.    The Court has jurisdiction over the parties pursuant to 28 U.S.C. §1332(a) because Plaintiff and Defendants are citizens of diverse states.

2.      American Contractors Indemnity Company ("ACIC") is a California corporation incorporated in California with its principal place of business in Los Angeles, California making it a citizen of California in accordance with 28 U.S.C. § 1332(c)(1).  ACIC is licensed to conduct business in Florida.

3.      Regis Southern, Inc. ("RSI") is an inactive corporation incorporated in Florida with is principal place of business in Orlando, Florida, in Orange County making it a citizen of Florida in accordance with 28 U.S.C. § 1332(c)(1).

4.      Upon information and belief, Defendant Chris M. Netram ("Netram") is a resident of Indialantic, Florida, in Brevard County making Netram a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

5.      Upon information and belief, Defendant Ramasar Bhagu ("Bhagu") is a resident of Palm Bay, Florida, in Brevard County making Bhagu a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

6.      Upon information and belief, Defendant Ranjit K. Chetram ("Chetram") is a resident of Orlando, Florida, in Orange County making Chetram a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

7.      The Defendant State of Florida, Department of Environmental Protection ("FDEP") is an agency of the State of Florida government that maintains offices and engages in business within the State of Florida making it a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

8.      The Defendant State of Florida, Department of Transportation ("FDOT") is an agency of the State of Florida government that maintains offices and engages in business within the State of Florida making it a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

2

9.     The Defendant Gulf Coast Bank & Trust Company ("Gulf Coast") is an active corporation incorporated in Louisiana with is principal place of business in New Orleans, Louisiana, making it a citizen of Louisiana in accordance with 28 U.S.C. § 1332(c)(1).

10.     Gulf Coast filed a State of Florida Uniform Commercial Code Financing Statement Form on December 12, 2018, Document No. 201807218943, naming RSI as the Debtor.

11.     The causes of action alleged herein fall within the jurisdictional limits of the Court because ACIC seeks to recover more than $75,000.00 from Defendants RSI, Netram, Bhagu, and Chetram.

12.     Venue is appropriate in this Court because one or more of the Defendants reside in or have their principal place of business within the boundaries of the Middle District of Florida, because one or more Defendants reside in or have their principal place of business located in one of the counties within the province of the Orlando Division of this Court, and because the projects at issue, or portions of the projects, are located in the counties within the boundaries of the Orlando Division of this Court.

## GENERAL ALLEGATIONS

### The Bonds and Indemnity Agreement

13.     As part of its business, ACIC issues payment and performance bonds and stands as surety for selected contractors.

14.     In connection with its work, RSI from time to time required surety payment and performance bonds.

15.     To induce ACIC to issue payment and performance bonds on its behalf, RSI, Netram, Bhagu, and Chetram entered into an indemnity agreement with ACIC.

3

16.     Specifically, on May 20, 2015, RSI, Netram, Bhagu, and Chetram (collectively, the "Indemnitors") each executed a General Indemnity Agreement ("Agreement") in favor of ACIC, its affiliates, and its agents.  A true and correct copy of the Agreement is attached hereto and incorporated herein as **Exhibit "A**."

17.     The execution of the Agreement, and the Indemnitors' undertaking of the various responsibilities and obligations contained therein, were absolute conditions precedent and prerequisites to ACIC issuing any bonds naming RSI as a principal.

18.     According to the Agreement, the Indemnitors agreed, in part, to:

> … jointly and severally, exonerate, indemnify, keep indemnified, reimburse and save and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses, investigative fees and expenses, accountants' fees and expenses, engineering and other professional or consultants' fees and expenses of any kind, in-house attorneys' fees and expenses, interest, court costs and any and all other types of losses, costs or expenses of whatsoever kind or nature, and from and against all such losses, costs or expenses which the Surety may sustain or incur or which arise by reason of or in any manner in consequence of, no matter how remotely, any one or more of the following: the execution or procurement by the Surety of any Bond; the failure of any Principal or Indemnitor to perform or comply with any and all of the terms, covenants and conditions of this Agreement; the enforcement of any of the terms, covenants and conditions of this Agreement; the conduct of any investigation regarding the Surety's alleged obligations or liabilities under any Bond or in connection with any Contract; any attempt by or on behalf of the Surety to obtain a release or reduction of the Surety's liability or alleged liability under any Bond or Contract; any attempt by or on behalf of the Surety to recover any unpaid premium in connection with any Bond; the prosecution or defense of any action or claim of whatsoever kind or nature in connection with any Bond or Contract whether the Surety, in its sole and absolute discretion, elects to employ its own counsel or, in lieu thereof or in addition thereto, permits or requires any Principal and/or Indemnitor to make arrangements for or assist in the Surety's legal representation and protection; the loan or advance of any monies to any Principal, or Indemnitor; the Surety's attempt to

4

determine, discharge or mitigate its loss or exposure to loss in connection with any Bond or Contract, or to enforce any of its rights pursuant to this Agreement, by suit or otherwise.

In the event of any payment of any kind by the Surety, the Principal and Indemnitor further agree that the liability of the Principal and the Indemnitor shall extend to and include, and the Surety shall be entitled to charge and recover for, any and all disbursements made by it in Good Faith under the belief that: (1) any Principal or Indemnitor is or has been in default under or pursuant to this Agreement; or (2) the Surety was or might be liable to pay the claims asserted or the sums paid, whether or not such liability actually existed; or (3) such payments were or are necessary or expedient, in the Surety's sole and absolute discretion, to protect any of the Surety's rights or interests or to avoid or lessen the Surety's liability or alleged liability, whether or not such liability, necessity or expediency actually existed; and the Principal and Indemnitor further agree, acknowledge and stipulate that, notwithstanding the foregoing or any other provision of this Agreement or any other agreement relating to this Agreement, the Surety shall be entitled to the rights and remedies set forth in this Section III, and to all of the benefits of this Agreement, with respect to any liability, payment, loss or cost that is incurred or made by the Surety in Good Faith. The Principal and Indemnitor further agree that the liability of the Principal and Indemnitor shall extend to and include an obligation to pay to the Surety interest on any payments made by the Surety as a result of having issued any Bond, at the rate often percent (10%) per annum or the maximum rate allowed by law, whichever is lower, calculated from the date such payment is made by the Surety.

[Exhibit A, pp. 3-4, Section III].

19.     The Agreement also provides that:

The Surety shall have the right, in its sole and absolute discretion, to adjust, settle, prosecute, defend, compromise, litigate, protest, or appeal any claim, demand, suit, award, assessment or judgment an or in connection with any Bond or Bonded Contract. If, however, any Principal or Indemnitor desires that the Surety consider adjusting, settling, prosecuting, defending, compromising, litigating, protesting, or appealing, any claim, demand, suit, award, assessment, or judgment against any Principal or the Surety, such Principal or Indemnitor shall:

A. Give written notice to the Surety to this effect by certified or registered mail; and

B. Simultaneously therewith, deposit with the Surety cash, securities or other collateral, in form and amount acceptable to the Surety in its sole and absolute discretion, to completely cover the Surety's exposure or perceived exposure to any loss, cost or expense for which the Surety is entitled to exoneration, indemnification or reimbursement pursuant to this Agreement....

[Exhibit A, p. 5, Section IX].

20.    Additionally, the Agreement provides that:

In the event of any payment by the Surety, an itemized statement of the amount of any such payment sworn to by any officer or authorized representative of the Surety, or any voucher or vouchers, invoices or other evidence of such payment shall be prima facie evidence of the fact and the amount of such payment, and the extent of the liability of any Principal and Indemnitor to the Surety, and in the absence of actual fraud shall be final, conclusive and binding upon any Principal and Indemnitor in any claim, suit or other proceeding by the Surety to recover the amount of such payments pursuant to this Agreement or otherwise.

[Exhibit A, p. 6, Section X].

21.    Finally, the Agreement provides that:

If an Event of Default shall occur, or if any claim is made against the Surety by any subcontractor, supplier, obligee or other person under any Bond, whether such event or claim shall be disputed or undisputed, contingent or non-contingent, or liquidated or unliquidated, and without limiting any other rights and remedies of the Surety under this Agreement or otherwise existing in law or at equity, upon the Surety's demand the Principal and Indemnitor shall immediately deposit with the Surety money, securities or other collateral in any amount, value, form, and source as may be designated by and acceptable to the Surety in its sole and absolute discretion. Any such monies, securities or other collateral shall be held by the Surety as collateral security, in addition to and not in lieu of or substitution for any monies, securities or other collateral that may have been previously deposited with the Surety by or on behalf of the Principal and any other benefits and protections afforded to the Surety by this Agreement or any other agreement.

6

[Exhibit A, p. 6, Section XI(A)].

22.     The Agreement is unequivocal and specific in setting forth the Indemnitors'
obligations to indemnify and keep ACIC indemnified "from and against any and all demands,
liabilities, losses, costs, damages, attorneys' fees and expenses, investigative fees and expenses,
accountants' fees and expenses, engineering and other professional or consultants' fees and
expenses of any kind, in-house attorneys' fees and expenses, interest, court costs and any and all
other types of losses, costs or expenses of whatsoever kind or nature" as a result of executing the
payment and performance bonds or because of RSI's, or the Indemnitors', failure to comply with
the Agreement.

23.     ACIC agreed to issue payment and performance bonds naming RSI as principal at
the Indemnitors' request in consideration for their promise to comply with the terms of the
Agreement.

24.     ACIC issued payment and performance bonds naming RSI as principal (the
"Bonds") on construction projects located in Marion, Orange, Osceola, St. Johns, and Volusia
Counties (the "Projects").  More specifically, the below sets forth the relevant Projects along
with the respective obligees and bond numbers:

| Bond No. | Project | Obligee |
|---|---|---|
| 1001119260 | Pneumatic Water Tank Replacement in Rainbow Springs Park, Rainbow Springs Park, Marion County, Contract No. CN437 ("Rainbow Springs Project") | State of Florida Department of Environmental Protection |
| 1001119285 | BDC44-17/18 Bathhouse Renovation & Water Supply Line Replacement in Faver ("Bathhouse Project") | State of Florida Department of Environmental Protection |
| 1000119214 | Construction of Turnouts, Sodding, Drainage Improvements, Contract No. E5U94 ("Turnouts Project") | State of Florida Department of Transportation |

25.     ACIC has received claims against the Bonds from various entities, including: (a) an obligee requesting ACIC's assistance, with RSI's approval, in advancing funds to purchase necessary equipment for one of the Projects in exchange for an agreement from the obligee to release contract proceeds directly to ACIC; and (b) several subcontractors, material suppliers, and/or rental equipment providers making payment bond claims for the labor, services, materials, or equipment they performed or furnished on the Projects at RSI's request, but for which RSI has not paid.  The individuals or entities referenced in subparts (a) and (b) are collectively referred to herein as "Claimants."

26.     Since RSI refused or was unable to resolve the Claimants' claims, ACIC was forced to hire the undersigned attorney to assist in responding to, investigating, and resolving the various claims.

27.     ACIC has incurred losses as a result of issuing the Bonds, which losses include the costs to defend itself against Claimants' claims and the cost to resolve Claimants' claims.

28.     As of the date of filing this Complaint, ACIC has been forced to pay or satisfy various Claimants' claims (the "Claims Paid").  The following is a breakdown for the Claims Paid as of the date of this Complaint:

| Date Paid | Payee | Bond No. / Project | Amount Paid |
|---|---|---|---|
| 06/24/2019 | Universal Engineering Sciences, LLC | 1001119214 Turnouts Project | $12,178.75 |
| 07/30/2019 | Sod Masters, Inc. | 1001119214 Turnouts Project | $18,725.10 |
| 09/04/2019 | S David Flooring, LLC | 1001119285 Bathhouse Project | $10,900.00 |
| 09/20/2019 | WW Gay Mechanical Contractor, Inc. | 1001119285 Bathhouse Project | $23,268.50 |
| 09/23/2019 | Kenco Plastic Company | 1001119260 Rainbow Springs Project | $10,735.97 |
| 09/23/2019 | Dixie Tank Company | 1001119260 | $27,497.60 |

| | | | |
|---|---|---|---|
| | | Rainbow Springs Project | |
| 11/20/2019 | Tucci & Family Co., Inc. | 1001119260 Rainbow Springs Project | $9,885.00 |
| 03/06/2020 | Volthom Electric, Inc. | 1001119260 Rainbow Springs Project | $5,980.17 |
| 03/25/2020 | Earls Well Drilling & Pump Service Inc. | 1001119260 Rainbow Springs Project | $42,400.00 |
| | | **TOTAL** | **$161,571.09** |

29.     In addition to the Claims Paid, ACIC has paid attorneys' fees to investigate and/or satisfy the Claimants' claims and ACIC has received additional claims that are pending further investigation.

30.     Before filing this action, ACIC demanded, orally and in writing, that the Indemnitors post collateral and indemnify it for all amounts it has incurred to satisfy the Claimants' claims, and for the attorneys' fees and costs ACIC has incurred as a result of the Claimants' claims.

31.      Despite ACIC's demand, the Indemnitors have failed and refused to comply with ACIC's request for collateral and indemnification for the losses ACIC's has suffered as a result of issuing the Bonds.

32.     The Indemnitors have not reimbursed ACIC for the Claims Paid or the attorneys' fees and other costs and expenses ACIC has incurred as a result of issuing the Bonds.

33.     ACIC has retained the undersigned attorneys to represent it in this action, and is obligated to pay these attorneys a reasonable fee for their services rendered.

34.     ACIC has performed all of the terms, covenants, and conditions required on its part to be performed under the terms of the Agreement or has been excused from doing so by Indemnitors.

35.     All conditions precedent to maintaining this action have occurred, been excused, or otherwise been waived.

## COUNT I
### (Specific Performance against the Indemnitors)

36.     ACIC realleges and incorporates paragraphs 1 through 35 above, as though fully set forth herein.

37.     The Indemnitors have failed and refused to make payments to numerous Claimants and/or allegedly failed to properly complete other obligations under the contracts that ACIC bonded.

38.     As a result, ACIC has been asked to fulfill RSI's obligations to the Claimants pursuant to its obligations under the Bonds.

39.     ACIC has suffered, and will continue to suffer, various kinds and natures of liability, loss, and expense as a result of having executed the Bonds due to the Indemnitors' failure to honor their obligations under the Agreement and ACIC's efforts to enforce the Agreement's covenants and conditions.

40.     The Indemnitors failed to collateralize ACIC upon demand as the Agreement requires.

41.     The Agreement provides, in part, that:

> The Principal and Indemnitor acknowledge that the failure of either to pay to the Surety, immediately upon demand, the sums demanded by the Surety pursuant to Section III and/or Section XI hereof and/or to provide access to books, records and information

as required by Section XV hereof shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law. The Principal and Indemnitor agree that Surety shall be entitled at its election to immediate injunctive relief for specific performance of any and all obligations of the Principal and/or Indemnitor under this Agreement, including, but not limited to, such obligations as set forth in Sections III, XI and XV and to pay to the Surety all sums demanded hereunder, and the Principal and Indemnitor hereby waive any claims or defenses to the contrary.

[Exhibit A, pp. 10-11, Section XXXIV].

42.     Before filing this action, ACIC demanded orally and in writing that the Indemnitors post collateral security to protect ACIC from losses in accordance with the Agreement.

43.     Despite ACIC's repeated demands, the Indemnitors have failed and/or refused to perform their contractual obligations to reimburse and collateralize ACIC.

44.     If the requested relief is not granted, the Indemnitors may sell, transfer, dispose, lien, secure, or otherwise divert assets, thereby preventing ACIC's access to these assets for discharging the obligations of the Indemnitors to exonerate and indemnify ACIC.  Such actions would irreparably harm ACIC.

45.     ACIC's current monetary exposure as a result of the Claimant's claims exceeds $180,000.00, which amount does not include ACIC's potential liability for attorneys' fees, interest, or costs.

46.     ACIC has no adequate remedy at law to enforce its rights and it will be irreparably harmed if the Indemnitors are not required to post collateral with ACIC.

47.     The Agreement is just and reasonable and supported by adequate consideration.

48.     The terms of the Agreement are sufficiently clear, definite, and certain to allow enforcement by this Court.

49.     The performance ACIC seeks is substantially identical to that promised in the Agreement.

WHEREFORE, ACIC requests that the Court enter a decree and immediate order of specific performance compelling the Indemnitors, jointly and severally, to:

        a.     prevent the Indemnitors from diverting or disbursing any funds relating to the Bonds or Projects without ACIC's express and written approval;

        b.     compel the Indemnitors to post a bond or suitable collateral to secure ACIC against any alleged losses or expenses;

        c.     attach or freeze the Indemnitors' assets until cash or an appropriate bond or collateral is posted to adequately protect ACIC;

        d.     require the Indemnitors to render to ACIC a full and complete accounting of all assets owned by them or in which they, jointly or severally, have any interest;

        e.     permanently enjoin and restrain the Indemnitors from selling, transferring, disposing of, or liening any assets or property, and further enjoining and restraining the Indemnitors from allowing any assets or property to be liened, unless and until ACIC shall be placed in funds;

        f.     grant a lien upon all assets and property, including realty, personalty and mixed, in which the Indemnitors have any interest.  ACIC further requests that such lien(s) shall secure ACIC against any loss it may sustain or incur by virtue of its having executed the Bonds.  ACIC further requests that such lien(s) remain in effect unless and until ACIC is placed in funds as requested hereinabove;

        g.     require the Indemnitors, jointly and severally, to pay all attorneys' fees, costs, and expenses that ACIC has incurred;

        h.      honor all further agreements and obligations contained in the Agreement; and

        i.      grant such further relief as the Court deems just and proper.

## COUNT II
### (Breach of Contract / Contractual Indemnity against the Indemnitors)

50.    ACIC realleges and incorporates the allegations in paragraphs 1 through 35 as if fully set forth herein.

51.    Pursuant to the Agreement, the Indemnitors promised to "exonerate, indemnify, keep indemnified, reimburse and save and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses, investigative fees and expenses, accountants' fees and expenses, engineering and other professional or consultants' fees and expenses of any kind, in-house attorneys' fees and expenses, interest, court costs and any and all other types of losses, costs or expenses of whatsoever kind or nature" that ACIC incurs by reason of, among other things, having executed the Bonds or enforcing the Agreement.

52.    Pursuant to the Agreement, the Indemnitors also agreed to "immediately deposit with the Surety money, securities or other collateral" to cover ACIC's liability.

53.    The Indemnitors have committed various breaches and defaults of the Agreement, including but not limited to:

        a.      failing and refusing to pay the Claimants' claims;

        b.      failing and refusing to collateralize ACIC against future loss or liability with regard to claims made on the Bonds; and

c.      failing and refusing to indemnify ACIC from any and all liability for losses and expenses that ACIC incurred, of whatsoever kind or nature, relating to the claims made on the Bonds.

54.     As a result of the Indemnitors' breaches of the Agreement, ACIC has suffered damages, including but not limited to the following damages, which continue to accrue, and thus ACIC's damages are continuing in nature:

a.      payments made to satisfy the Claimants' claims; and

b.      attorneys' fees and other costs and expenses that ACIC has incurred as a result of issuing the Bonds;

55.     ACIC is entitled to an award of its attorneys' fees and costs in pursuing this claim according to the Agreement.

WHEREFORE, ACIC demands judgment against the Indemnitors, jointly and severally, for damages, costs of this action, prejudgment interest, attorneys' fees and such further relief as the Court deems just and proper.

## <u>COUNT III</u>
### (Quia Timet against the Indemnitors)

56.     ACIC realleges and incorporates the allegations in paragraphs 1 through 14, 24 through 33, and 35 as if fully set forth herein.

57.     As a result of issuing the Bonds, ACIC has already been called upon to pay RSI's debts and/or perform RSI's obligations.

58.     The Indemnitors are obligated to indemnify and keep ACIC indemnified from any liability for any losses or expenses.

14

59.     The Indemnitors have failed to meet their indemnity obligations by, among other things, failing or refusing to pay the Claimants' claims and failing and/or refusing to indemnify ACIC for the amounts it has paid to satisfy the Claimants' claims.

60.     ACIC is entitled to have the Indemnitors fully collateralize it before making payments in discharge of any alleged obligations under the Bonds.

61.     The Indemnitors have failed and/or refused and continue to refuse to perform their various obligations.  As a result, ACIC reasonably fears that it will suffer further damages as a result of the Indemnitors' alleged defaults on the Projects, their failure to satisfy the Claimants' claims, and their failure to honor their obligations to ACIC.

62.     Unless the Court immediately grants the requested relief, ACIC will not be adequately secured and/or collateralized for potential obligations under the Bonds before making any necessary and appropriate payments.  In addition, ACIC will be forced to incur attorneys' fees, and costs to investigate, defend against, and resolve the Claimants' claims – costs for which the Indemnitors agreed to fully collateralize ACIC.

63.     Further, if the Court does not grant the requested relief, the Indemnitors may sell, transfer, dispose, lien, secure, or otherwise divert assets, thereby preventing ACIC's access to these assets for discharging the obligations of the Indemnitors to exonerate and indemnify ACIC. Such actions would irreparably harm ACIC.

64.     ACIC is without a plain, speedy, or adequate remedy at law, and will be irreparably and permanently injured if the Court does not grant the relief sought below.

65.     ACIC's current monetary exposure as a result of the Claimant's claims exceeds $180,000.00, which amount does not include ACIC's potential liability for attorneys' fees, interest, or costs.

66.     As a result of the Claimants' claims, ACIC's payment of various claims, and the Indemnitors' failure and/or refusal to satisfy their obligations, ACIC has established a reserve as a result of the exposure to the currently known claims.

67.     ACIC's fear of further loss is reasonable based on the allegations in this Complaint, and because: (a) ACIC has already suffered damages as a result of satisfying a portions of the Claimants' claims that the Indemnitors failed and/or refused to satisfy; (b) ACIC currently faces claims from multiple Claimants; and (c) ACIC faces further exposure and liability as a result of the Claimants' claims.

68.     ACIC is entitled to an award of its attorneys' fees and costs in pursuing this claim according to the Agreement and Florida law.

WHEREFORE, ACIC requests that the Court enter an Order:

a.      preventing the Indemnitors from diverting or disbursing any funds relating to the Bonds or Projects without ACIC's express and written approval;

b.      compelling the Indemnitors to post a bond or suitable collateral to secure ACIC against any alleged liability, losses, or expenses;

c.      attaching or freezing the Indemnitors' assets until cash or an appropriate bond or collateral is posted to adequately protect ACIC;

d.      requiring the Indemnitors to render to ACIC a full and complete accounting of all assets owned by them or in which they, jointly or severally, have any interest;

e.      requiring the Indemnitors to allow ACIC full and complete access to all financial books, records, and accounts maintained by or for them;

f.      permanently enjoining and restraining the Indemnitors from selling,

transferring, disposing of, or liening any assets or property, and further enjoining and restraining the Indemnitors from allowing any assets or property to be liened, unless and until ACIC shall be placed in funds;

g.    granting a lien upon all assets and property, including realty, personalty and mixed, in which the Indemnitors have any interest.  ACIC further requests that such lien(s) shall secure ACIC against any loss it may sustain or incur by virtue of its having executed the Bonds.  ACIC further requests that such lien(s) remain in effect unless and until ACIC is placed in funds as requested hereinabove;

h.    requiring the Indemnitors, jointly and severally, to pay all attorneys' fees, costs, and expenses that ACIC has incurred; and

i.    granting such further relief as the Court deems just and proper.

## COUNT IV
### (Equitable Subrogation against RSI)

69.    ACIC realleges and incorporates the allegations in paragraphs 1 through 14, 24 through 33, and 35 as if fully set forth herein.

70.    ACIC was forced to pay the Claimants after RSI failed and/or refused to do so.

71.    RSI was primarily liable to the Claimants under the terms of their subcontracts and the Bonds.

72.    ACIC's liability to the Claimants was merely technical, secondary, and vicarious to that of RSI, which was actively and completely at fault for the underlying liability to the Claimants.

73.    RSI, as principal on the various Bonds, was required to pay the Claimants' claims.

74.     ACIC, having paid to settle the various Claimants' claims, is equitably subrogated to the Claimants' rights against RSI.

75.     ACIC's payments to the Claimants, and any future payments to Claimants, were a result of its obligations under the Bonds and to protect its own interests, not as a volunteer.

76.     ACIC satisfied the entire amount due and owing to each claimant relating to the respective bond that ACIC issued.

77.     Neither the Indemnitors nor any other third-parties' rights will be harmed by ACIC's subrogation to the Claimants' rights.

78.     ACIC's damages include, but are not limited to, all sums ACIC has paid to settle the Claimants' claims and ACIC's costs and fees incurred to pursue this action.

WHEREFORE, ACIC demands judgment against RSI for damages, court costs, prejudgment interest, attorneys' fees, and such other relief as the Court deems just and proper.

## COUNT V
### (Exoneration against RSI)

79.     ACIC realleges and incorporates the allegations in paragraphs 1 through 14, 24 through 33, and 35 as if fully set forth herein.

80.     RSI has allegedly been unable and/or unwilling to satisfy its obligations on the construction Projects to which the Bonds relate by, in part, failing to pay various Claimants.

81.     ACIC is not attempting to avoid its secondary liability to any of the Claimants for the reasonable value of labor, material, services and/or equipment they provided on the Projects, to the extent the Claimants demonstrated that they were owed such monies.

82.     Instead, ACIC demands that RSI be compelled to fulfill its obligations to ACIC by indemnifying ACIC for the Claimants' claims.

18

83.     Under the doctrine of exoneration, ACIC is entitled to have RSI exonerate it for all amounts ACIC has paid and/or incurred as a result of issuing the Bonds.

WHEREFORE, ACIC requests that the Court enter an Order compelling RSI to exonerate ACIC by fulfilling its primary obligations to the Claimants and to place ACIC in funds sufficient to reimburse it for the losses ACIC has already suffered.

## COUNT VI
### (Common Law Indemnity against RSI)

84.     ACIC realleges and incorporates paragraphs 1 through 1 through 14, 24 through 33, and 35 as though fully set forth herein.

85.     ACIC is without fault for the Claimants' claims.

86.     ACIC had a special relationship with RSI by virtue of issuing the Bonds.

87.     ACIC's liability under the Bonds, if any, is merely technical, secondary, and vicarious to that of RSI, which is actively and completely at fault for, and obligated to timely pay, any underlying liability on the Bonds, including, without limitation, any liability to the Claimants.

88.     As a direct and proximate result of RSI's failure to honor its obligations, ACIC has incurred and continues to incur damages, losses and expenses, including attorneys' fees and costs, by reason of having executed the Bonds.

89.     RSI is liable to ACIC for all losses, expenses, and attorneys' fees sustained by reason of having executed the Bonds including, without limitation, all payments ACIC has made to satisfy the Claimants' claims and all attorneys' fees ACIC incurs as a result of issuing the Bonds.

19

90.     To date, ACIC has incurred damages in the form of payments made to satisfy the Claimants' claims.  ACIC has also incurred damages in the form of attorneys' fees, interest, and costs, as a result of issuing the Bonds.

91.     ACIC is entitled to receive its reasonably incurred attorneys' fees pursuant to applicable Florida law.

WHEREFORE, ACIC requests that the Court enter judgment against RSI for damages, attorneys' fees, prejudgment interest, costs, and such further relief as the Court deems just and proper.

## COUNT VII
**(Declaratory Judgment against FDEP, Gulf Coast, and RSI – Rainbow Springs Project)**

92.     ACIC realleges and incorporates the allegations in paragraphs 1 through 35 as if fully set forth herein.

93.     In July 2018, RSI entered into a contract with the FDEP on the Rainbow Springs Project with a total contract amount of $139,817.

94.     ACIC issued payment and performance bonds naming RSI as principal on the Rainbow Springs Project.

95.     FDEP requested ACIC's assistance, with RSI's approval, in advancing funds to purchase necessary equipment for the Rainbow Springs Project in exchange for an agreement from FDEP to release contract proceeds directly to ACIC.

96.     In reliance upon the FDEP's promise to pay ACIC from the Rainbow Springs Project's contract balance, ACIC paid $38,258.57 to Kenco Plastic Company and Dixie Tank Company for equipment FDEP needed to complete the Rainbow Springs Project.

97.     On or about the same date, RSI issued a signed Letter of Direction to FDEP irrevocably requesting that FDEP pay ACIC $38,258.57 from the Rainbow Springs Project's contract balance.

98.     Based upon information and belief, FDEP has paid RSI $36,900 as of the date of this Complaint and holds a remaining Rainbow Springs Project contract balance of $102,917.

99.     To date, ACIC has paid $96,498.74 for Claimants' claims on the Rainbow Springs Project.

100.    On numerous occasions, ACIC made a demand upon FDEP for a release of the Rainbow Springs Project's contract balance to ACIC to reimburse ACIC for the Claims Paid.

101.    To date, FDEP refuses to release the Rainbow Springs Project's contract balance to ACIC, states that it does not know if other creditors of RSI assert equal rights to the funds, and takes the position that it first gets to setoff the contract balance by $25,600 in liquidated damages for RSI's delay in performance.

102.    This is a claim for a declaratory judgment brought pursuant to § 86.011, Fla. Stat. ACIC has a dispute with FDEP, Gulf Coast, and RSI.  ACIC is in doubt as to its rights to the Rainbow Springs Project's contract balance and requests the Court declare that ACIC has superior rights to that of RSI, Gulf Coast, and any other potential creditors due to ACIC's payment for work performed on the Rainbow Springs Project.

103.    There is a *bona fide*, actual, present, practical need for the declaration.

104.    This declaration deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

105.    ACIC's rights are dependent upon the facts or the law applicable to the facts.

106.    FDEP, Gulf Coast, and RSI are persons who have, or reasonably may have, an actual, present, adverse and antagonist interest in the subject matter, either in fact or law.

107.    ACIC has performed, or FDEP, Gulf Coast, and RSI have waived, all conditions precedent to the bringing of this action.

108.    All potential known adverse interests are before the Court.

109.    The relief sought is not merely giving of legal advice by the courts or the answer to questions propounded from curiosity.

WHEREFORE, ACIC requests that the Court grant declaratory judgment in its favor, declare that ACIC's rights to the Rainbow Springs Project's contract proceeds in FDEP's possession are superior to Gulf Coast's and RSI's rights, declare the amount of contract proceeds remaining on the Rainbow Springs Project that ACIC is entitled to receive, and such further relief as the Court deems just and proper.

## <u>COUNT VIII</u>
### (Declaratory Judgment against FDEP, Gulf Coast, and RSI – Bathhouse Project)

110.    ACIC realleges and incorporates the allegations in paragraphs 1 through 35 as if fully set forth herein.

111.    In September 2018, RSI entered into a contract with the FDEP on the Bathhouse Project with a contract amount of $181,125.

112.    ACIC issued payment and performance bonds naming RSI as principal on the Bathhouse Project.

113.    Based upon information and belief, FDEP has paid RSI $151,310.56 as of the date of this Complaint and holds a remaining Bathhouse Project contract balance of $29,814.44.

114.    To date, ACIC has paid $34,168.50 for Claimants' claims on the Bathhouse Project.

115.    On numerous occasions, ACIC made a demand upon FDEP for a release of the Bathhouse Project's contract balance to ACIC to reimburse ACIC for the Claims Paid.

116.    To date, FDEP refuses to release the Bathhouse Project's contract balance to ACIC, states that it does not know if other creditors of RSI assert equal rights to the funds, and takes the position that it first gets to setoff the contract balance by $24,600 in liquidated damages for RSI's delay in performance.

117.    This is a claim for a declaratory judgment brought pursuant to § 86.011, Fla. Stat. ACIC has a dispute with FDEP, Gulf Coast, and RSI.  ACIC is in doubt as to its rights to the Bathhouse Project's contract balance and requests the Court declare that ACIC has superior rights to that of RSI, Gulf Coast, and any other potential creditors due to ACIC's payment for work performed on the Bathhouse Project.

118.    There is a *bona fide*, actual, present, practical need for the declaration.

119.    This declaration deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

120.    ACIC's rights are dependent upon the facts or the law applicable to the facts.

121.    FDEP, Gulf Coast, and RSI are persons who have, or reasonably may have, an actual, present, adverse and antagonist interest in the subject matter, either in fact or law.

122.    ACIC has performed, or FDEP, Gulf Coast, and RSI have waived, all conditions precedent to the bringing of this action.

123.    All potential known adverse interests are before the Court.

124.    The relief sought is not merely giving of legal advice by the courts or the answer to questions propounded from curiosity.

WHEREFORE, ACIC requests that the Court grant declaratory judgment in its favor, declare that ACIC's rights to the Bathhouse Project's contract proceeds in FDEP's possession are superior to Gulf Coast's and RSI's rights, declare the amount of contract proceeds remaining on the Bathhouse Project that ACIC is entitled to receive, and such further relief as the Court deems just and proper.

## COUNT IX
### (Declaratory Judgment against FDOT, Gulf Coast, and RSI – Turnouts Project)

125.    ACIC realleges and incorporates the allegations in paragraphs 1 through 35 as if fully set forth herein.

126.    In 2018, RSI entered into a contract with the FDOT on the Turnouts Project with a contract amount of $266,758.90.

127.    ACIC issued payment and performance bonds naming RSI as principal on the Turnouts Project.

128.    Based upon information and belief, FDOT has paid RSI $173,066.44 as of the date of this Complaint and holds a remaining Turnouts Project contract balance of $93,692.46.

129.    To date, ACIC has paid $30,903.85 for Claimants' claims on the Turnouts Project.

130.    On numerous occasions, ACIC made a demand upon FDOT for a release of the Turnouts Project's contract balance to ACIC to reimburse ACIC for the Claims Paid.

131.    To date, FDOT refuses to release the Turnouts Project's contract balance to ACIC, states that it does not know if other creditors of RSI assert equal rights to the funds, and

takes the position that it first gets to setoff the contract balance by $81,096 in liquidated damages for RSI's delay in performance.

132.    This is a claim for a declaratory judgment brought pursuant to § 86.011, Fla. Stat. ACIC has a dispute with FDOT, Gulf Coast, and RSI.  ACIC is in doubt as to its rights to the Turnouts Project's contract balance and requests the Court declare that ACIC has superior rights to that of RSI, Gulf Coast, and any other potential creditors due to ACIC's payment for work performed on the Turnouts Project.

133.    There is a *bona fide*, actual, present, practical need for the declaration.

134.    This declaration deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

135.    ACIC's rights are dependent upon the facts or the law applicable to the facts.

136.    FDOT, Gulf Coast, and RSI are persons who have, or reasonably may have, an actual, present, adverse and antagonist interest in the subject matter, either in fact or law.

137.    ACIC has performed, or FDOT, Gulf Coast, and RSI have waived, all conditions precedent to the bringing of this action.

138.    All potential known adverse interests are before the Court.

139.    The relief sought is not merely giving of legal advice by the courts or the answer to questions propounded from curiosity.

WHEREFORE, ACIC requests that the Court grant declaratory judgment in its favor, declare that ACIC's rights to the Turnouts Project's contract proceeds in FDOT's possession are superior to Gulf Coast's and RSI's rights, declare the amount of contract proceeds remaining on the Turnouts Project that ACIC is entitled to receive, and such further relief as the Court deems just and proper.

Dated:  September 15, 2020.

_____*/s/ Ryan J. Weeks*_____
RYAN J. WEEKS, ESQ.
Florida Bar No. 57897
rweeks@mpdlegal.com
MILLS PASKERT DIVERS
100 N. Tampa St., Ste. 3700
Tampa, FL 33602
Telephone: (813) 229-3500
Facsimile: (813) 229-3502
*Attorney for Plaintiff*

26